IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN THE MATTER OF<br><br>SUBPOENA TO<br><br>JEFFREY T. PALUMBO | Civil Action No. 9:21-MC-80984 |

**FED. R. CIV. P. 45(d) MOTION TO QUASH AND FOR PROTECTIVE ORDER REGARDING SUBPOENA TO JEFFREY T. PALUMBO AND MEMORANDUM IN SUPPORT**

On April 29, 2021, Plaintiff Kevin Hoog ("Hoog") served Jeffrey T. Palumbo with a subpoena issued in *Kevin Hoog v. PetroQuest Energy, L.L.C., et al.*, No. 4:16-cv-00463-RAW, in the United States District Court for the Eastern District of Oklahoma (the "Oklahoma Lawsuit"). *See* Exhibit 1 (the "Palumbo Subponea"). Mr. Palumbo is a Vice President of NextEra Energy Marketing, LLC (formerly known as Nextera Energy Power Marketing, LLC) ("NEM"). *See* Exhibit 2 (Declaration of Jeffrey T. Palumbo). Neither Mr. Palumbo nor NEM are a party to the Oklahoma Lawsuit. Mr. Palumbo is not an employee, officer or representative of any of the three defendants in the Oklahoma Lawsuit.

Mr. Palumbo moves the Court under Federal Rule of Civil Procedure 45(d) to quash the Palumbo Subpoena and issue a protective order prohibiting counsel for Hoog from issuing him any further subpoenas. Mr. Palumbo also seeks his reasonable attorney's fees and costs in connection with filing this Motion.

**RELEVANT FACTUAL BACKGROUND**

The Oklahoma Lawsuit relates to oil and gas wells in Oklahoma and the payment of oil and gas royalties in connection with those wells. *See generally* Exhibit 3, Hoog's First Amended

Class Action Complaint (Dkt. #66) dated Aug. 10, 2017. Hoog is a royalty interest owner in certain oil and gas wells that were previously owned and operated by PetroQuest Energy, L.L.C. ("PetroQuest"). Ex. 3 at ¶ 4. WSGP Gas Producing, LLC ("WSGP") acquired certain oil and gas wells from PetroQuest and Trinity Operating (USG), LLC ("Trinity Operating") is the current operator of those oil and gas wells. *Id*. at ¶ 11. PetroQuest, Trinity Operating, and WSGP were are all named as defendants by Hoog in the Oklahoma Lawsuit.[1] Hoog alleges that the defendants breached his Oklahoma oil and gas lease by "underpayment or non-payment of royalties on natural gas and/or constituents of the gas stream . . . ." *Id*. at ¶ 1, 5. Hoog seeks to certify a class of "[a]ll persons who are royalty owners in Oklahoma wells where Defendants (including their affiliated predecessors and affiliated successors) are or were the operator (or a working interest owner who marketed their share of gas and directly paid royalties to the royalty owners) from January 1, 2008 to the date Class Notice is given." *Id*. at ¶ 13. Discovery is ongoing in the Oklahoma Litigation related to class certification issues. *See* Oklahoma Lawsuit, Order (Dkt. #192) at 1 (Court establishing "deadlines for the court to consider class certification" including the June 14, 2021 deadline for Hoog's class certification motion).

On April 22, 2021, Hoog served defendants with a copy of the Palumbo Subpoena. This was the first time that Mr. Palumbo or the defendants were provided any notice that Hoog sought to take Mr. Palumbo's deposition in the Oklahoma Lawsuit. Mr. Palumbo was personally served one week later on April 29, 2021. The deposition was scheduled for May 21, 2021, without any consultation with Mr. Palumbo or the defendants as to their availability for that date. Counsel for

---

[1] PetroQuest filed for bankruptcy on Nov. 6, 2018, settled its claims with Hoog and the putative class members in that bankruptcy proceeding, and was subsequently dismissed from the Oklahoma Lawsuit on Spet. 18, 2020. See Oklahoma Lawsuit, Dkt. #168 and 182.

Mr. Palumbo requested on multiple occasions, both during telephonic meet and confer sessions (on April 26 and May 7) and in email correspondence, that Hoog withdraw the Palumbo Subpoena. *See* Exhibit 4, Email correspondence from M. Blythe to R. Bradford dated May 3, 2021 and May 7, 2021 (green highlighting added); Exhibit 5, Email correspondence from M. Blythe to R. Bradford dated May 18, 2021.  On multiple occasions by telephone and email, including at least April 26, May 3, May 7, and May 18, counsel for defendants advised that defendants were not available for Mr. Palumbo's deposition on May 21, 2021.  *Id*.  On May 20, 2021, counsel for Hoog sent an email identifying the depositions that Hoog intended to take over the next seven days.  *See* Exhibit 6, Email correspondence from R. Bradford to M. Blythe dated May 20, 2021.  Mr. Palumbo's deposition, previously noticed for the next day, May 21, 2021, was not listed in that email.

On May 25, 2021, without any further meet and confer as required under the local and federal rules, Hoog filed a motion to compel in the Oklahoma Lawsuit seeking to force Mr. Palumbo to travel to Muskogee, Oklahoma for his deposition.  *See* Oklahoma Lawsuit at Dkt. #210.  The sole grounds set forth for Mr. Palumbo's deposition is that Mr. Palumbo "has signed agreements relating to the purchase and sale of natural gas which is the subject of the claims in" the Oklahoma Lawsuit.  Dkt. #210 at ¶ 5.  Hoog has failed to serve Mr. Palumbo with a copy of the motion to compel.

## ARGUMENT

**A.     This Court has jurisdiction to quash the subpoena and protect Mr. Palumbo**

Under Rule 45, the "court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden."  FED. R. CIV. P. 45(d)(3)(A); *see Brady v. Lee*, No. 14-23307, 2014 WL 12580025, at *1 (S.D. Fla. Oct. 29, 2014) ("Rule 45 requires that any attempt to enforce compliance with a subpoena directed at a nonparty shall be made in

3

the district court where compliance is required. Thus, the Movants request for relief from the Southern District of Florida appears to be improper. Simply put, this Court does not have the authority to compel Ms. Lee to appear for deposition or to produce documents in response to a subpoena issued from the Southern District of California which requires compliance in the Middle District of Florida."); *Narcoossee Acquisitions, LLC, v. Kohl's Dep't Stores, Inc.,* No. 6:14-cv-203-Orl-41 TBS, 2014 WL 4279073, at *1 (M.D. Fla. Aug. 28, 2014) ("Under the 2013 amendments to Federal Rule of Civil Procedure 45, the district court with jurisdiction to enforce and to quash subpoenas is the 'court for the district where compliance is required,' which may or may not be the court that issued the subpoena. The subpoena requires Ross to mail the documents to Kohl's attorney's office, which is located in the Middle District of Florida. Because compliance is required in the Middle District of Florida, this Court has jurisdiction to enforce or quash the subpoena.") (quoting FED. R. CIV. P. 45(d)(1), (d)(3), (g)).

The Palumbo Subpoena sets the place for Mr. Palumbo's deposition as Juno Beach, Florida. Palumbo Subpoena at 1. Further, Mr. Palumbo's residence and office are located in this jurisdiction. *See* Palumbo Decl. at ¶¶ 2, 4. Therefore, this Court has jurisdiction under Rule 45 to quash the subpoena and issue an order protecting Mr. Palumbo from any further subpoenas in the Oklahoma Litigation.

**B.    A more demanding burden analysis applies when a party subpoenas a nonparty executive like Mr. Palumbo**

Mr. Palumbo is a Vice President of NEM. Palumbo Decl. at ¶ 3. Hoog's sole grounds for requesting Mr. Palumbo's deposition is that Mr. Palumbo's "involvement on documents produced by Defendants to date" which are "signed agreements relating to the purchase and sale of natural gas which is the subject of the claims in" the Oklahoma Lawsuit. Exhibit 4, Email from R. Bradford to M. Blythe dated May 4, 2021 at ¶ 6 (green highlighting added); Oklahoma Lawsuit,

4

Mot. to Compel (Dkt. #210) at ¶ 5. While Mr. Palumbo in his capacity as Vice President of NEM executed three agreements with PetroQuest or Trinity Operating, Mr. Palumbo and NEM are not parties to the Oklahoma Litigation and Hoog cannot meet the high burden required to take the deposition of an executive and nonparty like Mr. Palumbo. Thus, the Court should quash the subpoena and protect Mr. Palumbo from the undue burden of being deposed.

"All civil discovery, whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1) in two fundamental ways." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). First, the matter sought must be "relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). "Relevance is not, on its own, a high bar. There may be a mountain of documents and emails that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative." *Jordan*, 921 F.3d at 188. Rule 26 therefore imposes another requirement: discovery must also be "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Proportionality requires courts to consider, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

As to depositions of high-level (or "apex") executives like Mr. Palumbo, unless the executive "(1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Tillman v. Adv. Pub. Safety, Inc.*, No. 15-CV-81782, 2017 WL 679980, at *2 (S.D. Fla. Feb. 16, 2017) (order granting defendants' motion for protective order prohibiting deposition of vice president and general counsel where plaintiff failed to demonstrate that vice president had unique, non-repetitive, firsthand knowledge of the facts at issue or that other less intrusive means of discovery have been exhausted without success) (internal quote and citation omitted); *Brown v. Branch Banking and Tr. Co.*, No. 13-81192-CIV, 2014 WL 235455, at

\*2 (S.D. Fla. Jan. 22, 2014) (denying plaintiffs' motion to compel deposition of president of defendant company where plaintiff failed to demonstrate less intrusive means were unsuccessful in obtaining information) (collecting cases); *see also Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518–19 (N.D. Okla. 2003) (Court granted order prohibiting depositions of defendant's CEO and Senior Vice-President and CFO because "the oral deposition of a high level corporate executive should not be freely granted when the subject of the deposition will be only remotely relevant to the issues of the case.") (citation omitted).

"When discovery is sought from nonparties, however, its scope must be limited even more. Nonparties are 'strangers' to the litigation, and since they have 'no dog in [the] fight,' they have 'a different set of expectations' from the parties themselves." *Jordan*, 921 F.3d at 189 (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)); *see Exxon Shipping Co. v. United States Dept. of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (nonparties are given "special protection against the time and expense of complying with subpoenas").

"A more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified." *Jordan*, 921 F.3d at 189 (quoting FED. R. CIV. P. 45(d)(3)(A)(iv)). "As under Rule 26, the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Id.* (citing *In re Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018); *Citizens Union of N.Y.C. v. Att'y Gen. of N.Y.*, 269 F.Supp.3d 124, 138 (S.D.N.Y. 2017)). "But courts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally." *Id.* (quoting *In re Public Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)).

Hoog cannot meet this high burden to demonstrate that Mr. Palumbo as an executive of nonparty NEM can be deposed in the Oklahoma Lawsuit.

**C.     Plaintiff's subpoena would be unduly burdensome on Mr. Palumbo, and will not lead to the discovery of relevant information**

Again, Mr. Palumbo is a Vice President of nonparty NEM. *See* Palumbo Decl. at ¶ 3. NEM is an energy marketer and, as part of its operations, purchases and sells natural gas produced in Oklahoma. *Id.* at ¶ 6. However, Mr. Palumbo is not involved in day-to-day operations regarding these gas sales. *Id.* He has not been involved in any monthly discussions with any of the defendants in the case related to NEM's purchase and sale of natural gas in Oklahoma. *Id.* As a result, he has no personal knowledge related to the purchase or sales price of natural gas at issue in the Oklahoma Lawsuit or any post-production expenses that may be deducted from royalties as alleged by Hoog in the Oklahoma Lawsuit. *Id.*

Hoog will undoubtedly argue that he has subpoenaed Mr. Palumbo and is entitled to his deposition because Mr. Palumbo signed agreements that Hoog may consider as relevant to his claims against the defendants in the case. Hoog is ***not a party*** to any agreement executed by Mr. Palumbo. In May 2016, Mr. Palumbo, on behalf of NEM, executed a Transaction Confirmation Physical Natural Gas Purchase and Sale Agreement with PetroQuest. Palumbo Decl. at ¶ 7. In October 2016, Mr. Palumbo, on behalf of NEM, executed a Base Contract for Sale and Purchase of Natural Gas and a Transaction Confirmation Physical Natural Gas Purchase and Sale Agreement with Trinity Operating. *Id*.

These documents are only possibly relevant—if at all—to the merits of Hoog's claims, ***not*** class certification, and the Oklahoma Lawsuit is not at the merits stage. Hoog's live complaint identifies four overarching questions of fact or law allegedly common to him and the putative class for which he intends to seek class certification under FED. R. CIV. P. 23:

  a. Whether the Plaintiff and members of the Class are beneficiaries of the implied Marketable Condition Rule (MCR), which requires Defendants to sever the gas from the ground and to prepare the gas for market at Defendants' sole expense?

    i. If so, whether: 1) the Midstream Costs of gathering, compression, dehydration, treatment, and processing (GCDTP) are costs associated with preparing the gas for market such that none of them should have been deducted from royalties but all of them were; or 2) whether the market for gas occurs before GCDTP are incurred such that the Class's claim is only for excessive deductions of Midstream Costs?

    ii. If not, whether the Class members were party to a lease that expressly allows deduction of all of the GCDTP Midstream Costs ("Express Deduction Lease" or "ED Lease"), such that these Class members have a claim only for excessive deductions of Midstream Costs, and if so, whether the Midstream Costs actually deducted were excessive in amount?

  b. Whether Defendants paid royalty to Plaintiff and members of the Class for all valuable constituents coming from their wells and which inured to Defendants' benefit either: 1) through credit toward the Midstream Costs; or 2) by contractual consideration in-kind to a midstream company (such as drip condensate, helium, liquefied nitrogen, some percentage of residue, some percentage of fractionated NGLs, plant fuel, or FL&U)?

  c. Whether Defendants (including any of their affiliates) paid royalty to Plaintiff and members of the Class based on a starting price below what Defendants or their affiliates received in arm's-length sales transactions?

  d. Can class-wide damages be calculated for Plaintiff's theories of liability?

Exhibit 3 at ¶ 17.  Mr. Palumbo has ***no*** personal knowledge relevant to these questions.  *See* Palumbo Decl. at ¶¶ 6-8.

Moreover, Mr. Palumbo executed the agreements on which Hoog seeks his deposition only as a representative of NEM, and the documents speak for themselves.  *See* Palumbo Decl. at ¶ 7. Mr. Palumbo is not himself a party to any of the documents, and has no unique personal knowledge regarding any purchases or sales that were made under the agreements, let alone of ones that might be relevant to the merits of the Oklahoma Lawsuit.  *Id.*  Indeed, Mr. Palumbo has no personal knowledge of the royalty payments or the operation of the gas wells at issue in the Oklahoma Lawsuit.  *Id.* ¶¶ 6-8.

As Mr. Palumbo's declaration establishes he has ***no*** unique personal knowledge of the facts surrounding the Oklahoma Lawsuit, the Palumbo Subpoena should be quashed. *See Carnival Corp. v. Rolls-Royce PLC*, No. 08-23318-CIV, 2010 WL 1644959, at *2 (S.D. Fla. Apr. 22, 2010) (denying plaintiff's motion to compel deposition of defendants' CEO where CEO provided detailed affidavit regarding "his lack of involvement in the facts giving rise to the instant case"); *Simon v. Pronational Ins. Co.*, No. 07-60757-CIV, 2007 WL 4893478, at *2 (S.D. Fla. Dec. 13, 2007) (granting defendant's motion for protective order prohibiting defendant CEO's deposition where CEO's declaration averred that he did not possess "relevant unique knowledge as to the Defendant's defense strategy at issue in this case."); *Thomas v. Int'l Business Machines*, 48 F.3d 478, 483 (10th Cir. 1995) (noting that apex employee provided affidavit disavowing personal knowledge surrounding the plaintiff's claims in holding that district court did not abuse its discretion in issuing a protective order); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (affirming issuance of protective order for president of company based upon the reasonable assertion that the president "did not have any direct knowledge of the facts"); *Miller v. Love's Travel Stops & Country Stores, Inc.*, No. CIV-06-1008-D, 2008 WL 11338079, at *7–8 (W.D. Okla. Mar. 7, 2008) (finding it "significant" in employment discrimination lawsuit that chairman of defendant's board of directors "submitted an affidavit testifying to his lack of knowledge concerning the circumstances" surrounding the plaintiff's termination, and granting motion to quash chairman's deposition).

The Palumbo Subpoena should also be quashed for the additional reason that Hoog cannot show he will be "unable to obtain the information he seeks through [Mr. Palumbo's] deposition via alternative, less intrusive discovery mechanisms." *Miller*, 2008 WL 11338079, at *7. To the extent Hoog believes the agreements are relevant to his claims, the counterparty to NEM for each

agreement is (or in the case of PetroQuest was) a party to the Oklahoma Lawsuit and Hoog can seek discovery from that defendant (to the extent he has not done so already in the almost five years his case has been pending). At his request, Hoog took the deposition of John Foreman as the corporate representative of PetroQuest on two occasions, including in November 2020 following PetroQuest's dismissal from the case, and has also taken four depositions of fact witnesses and corporate representatives of Trinity Operating. *See* Oklahoma Lawsuit, Notice to Take Videotaped Deposition of Corporate Representative(s) of PetroQuest (Dkt. #185) dated Oct. 19, 2020; Exhibit 6, Email dated May 10 from M. Blythe to R. Bradford (listing the confirmed depositions noticed By Hoog). For example, on May 26, 2021, Hoog took the deposition of Miles Demster as the corporate representative of Trinity Operating and in his individual capacity. *See* Exhibit 7, Notice of Rule 30(b)(6) Deposition Trinity Operating (USG), LLC and List of Exhibits to Deposition of M. Demster. Mr. Demster testified with respect to the sale of natural gas in Oklahoma and his involvement in the monthly discussions with NEM related to NEM's purchase of natural gas from oil and gas wells operated by Trinity Operating in Oklahoma. During the course of that deposition, counsel for Hoog elected not to make any of the three agreements that Mr. Palumbo executed exhibits to that deposition in order to seek information from Trinity Operating related to those agreements.

Because Mr. Palumbo has no firsthand knowledge of the facts at issue in the Oklahoma Litigation, Hoog cannot meet the high burden to take the deposition of Mr. Palumbo as an executive of nonparty NEM. The Court should quash the Palumbo subpoena and protect Mr. Palumbo from further discovery abuses by Hoog and his counsel.

## MEET AND CONFER

Pursuant to Local Rule 7.1(a)(3), counsel for Mr. Palumbo conferred with counsel for Hoog on multiple occasions by telephone and email in a good faith effort to resolve by agreement the

issues raised in this Motion. *See* Exhibits 4 – 6. Mr. Palumbo and Hoog were unable to resolve this dispute.

## CONCLUSION

For these reasons, Mr. Palumbo requests that the Court grant this Motion, quash the Palumbo Subpoena, and issue a protective order prohibiting Hoog from subpoenaing Mr. Palumbo again. There is no reason to put Mr. Palumbo to the undue burden of submitting to deposition when he has no unique personal knowledge of the facts giving rise to the Oklahoma Lawsuit. Pursuant to Fed. R. Civ. P. 37(a)(5), Mr. Palumbo requests that the Court award them him reasonable attorney's fees and costs in filing this Motion.

Respectfully submitted,

*/s/ Camellia Noriega*
Camellia Noriega (FL Bar #102777)
Camellia.Noriega@nexteraenergy.com
Michele R. Blythe (TX Bar #24043557) (*pro hac* pending)
Michele.Blythe@nexteraenergy.com
NEXTERA ENERGY RESOURCES, LLC
700 Universe Blvd.
Juno Beach, Florida 33408
Phone: (561) 304-5427
Facsimile: (561) 691-7103

**ATTORNEYS FOR JEFFREY T. PALUMBO**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 1, 2021, a true and correct copy of the foregoing document will be served on the following counsel of record via first class, U.S. mail and email:

Reagan E. Bradford
reagan@bradwil.com
Ryan K. Wilson
ryan@bradwil.com
BRADFORD & WILSON PLLC
431 Main Street, Suite D
Oklahoma City, Oklahoma 73102
Tel: (405) 698-2770
Fax: (405) 234-5506

Rex A. Sharp
rsharp@midwest-law.com
Ryan C. Hudson
rhudson@midwest-law.com
Scott B. Goodger
sgoodger@midwest-law.com
SHARP LAW, LLP
5301 W. 75th Street
Prairie Village, Kansas 66208

                                                                     */s/ Camellia Noriega*
                                                                      Camellia Noriega